CLEMENS vs. COLLINS.

1. If the maker of a non-negotiable note die, or make a general assignment of his property under the act regulating assignments of property, before the note becomes due; to make an assignor liable, it is necessary that the assignee should proceed against the estate of the deceased, or against the property in the hands of the assignee, unless he can shew that the maker of the note was, at its maturity, so insolvent that a suit against him would have been unavailing.

2. Whether the maker was so insolvent, is a question for the jury to determine, under the directions of the court, and will depend upon the amount of the debt, and the per centage thereon, which might be recovered.

APPEAL from St. Louis Circuit Court.

GAMBLE & BATES, *for Appellant.*

By the refusing of one set of instructions, and the giving of the other set, the Circuit Court

assumed and taught the jury, as law, two or three important propositions, which we think very erroneous; and—

1. The Circuit Court tells the jury, that if the maker of a note die, no matter how rich, nor how accessible his estate may be, the assignor of the note is bound to pay it; because the holder cannot sue the *maker*, as required by the Statute, and because the *dead* man is *non resident!*

2. That if the maker of a note assign his property to a trustee, to pay his debts—no matter how great the fund nor how accessible—the assignor is bound to pay the note, and the holder has no occasion to pursue the fund in the hands of the trustee.

On the contrary, we hold the true meaning of the statute to be, that the assignor is liable for whatever portion of money, due on the note, which the assignee cannot make, by diligently pursuing the maker and his *property*, by all the means furnished by our own laws—and no more. Pocock vs. Blount, 6 Mo. R., 345; Ricketson & Holt vs. J. & T. Wood & Co., 10 Mo. R.; Bank U. S. vs. Tyler, 4 Peters R., 366, especially p. 389; 3 A. K. Marshall's R., p. 59.

A new trial ought to have been granted for many reasons, but especially because the jury wholly disregarded the *second* instruction given at the instance of the defendant. Whether that instruction were right or wrong, is not the question here. If it were, it would be easy to shew, by referring to the facts proved, that it was both right and important. Certainly there was not more than *one* cause of action proved, and by finding a general verdict, expressly on all the counts, the jury not only falsified the testimony, but deprived the defendant of his motion in arrest, if there were any one good count. And we think that some of the counts are bad.

The instruction was positive, and the disobedience of the jury plain and unequivocal.


LESLIE & LORD, *for Appellee.*


It is contended by the appellee, that the evidence strongly supports the verdict, not only because it did not appear that the smallest amount could have been collected out of the estate of John Kerr, but because if any thing could have been collected, it was so small in amount as not to be embraced within the meaning of availabilty, as used in the Statute of Missouri. The testimony of several witnesses was, that John Kerr's estate was not worth a dividend; that J. & A. Kerr were notoriously insolvent, and no witness states such facts as makes it certain that there was a farthing of property belonging to either of the makers of the note.

The instructions given by the court, contain the correct principles of law, as applicable to the several counts in the declaration to which they point. The first and second counts aver the insolvency of both the makers, and the institution of a suit against one in diligent time; and the first instruction of the court points to the diligence used in the prosecution of the suit against the surviving maker, and dispenses with presentation for allowance before the Probate Court, because in said first and second counts it is averred, and by the evidence proved, that the estate of John Kerr was wholly worthless, and dispenses with presentation to the assignee of both estates, for the same reason.

If the latter part of the third instruction given by the court below, should, in the opinion of this court, be erroneous, still the judgment ought to stand, inasmuch as the finding of the jury on the two first counts was well warranted by the evidence in the case; and under correct instructions of law, barely stating to the jury that the solvency or insolvency of the estate of John Kerr did not affect the liability of the defendant under the third count of the plaintiff's declaration, should in no manner disturb the verdict and judgment, but should be treated by this court as if there had been but two counts in the declaration. The insolvency of Augustus Kerr, and of John Kerr's estate, was fully in issue under the first two counts, and the finding of the jury was, that both were utterly worthless. As to the amount or value of either or both the estates of the makers of this note, the appellee is content with the decision of this court in the case of Ricketson & Holt vs. J. & T. Wood & Co., 10 Mo. R.

In giving the latter part of the said third instruction, the Circuit Court considered that sufficient diligence had been used as against the surviving maker, to fix the liability of the defendant, without reference to the estate of the deceased maker, upon the ground, probably, that by statute, the note was several as well as joint; see Rev. Stat. 1845, p. 216, sec. 1; and that any suit against the administrator of John Kerr, within one year from date of administration, would be at the costs of the party bringing the suit. R. S. 1845, p. 94, sec. 25.     In this view of the subject that instruction is not error.

The law applicable to the case at bar, is well laid down in the case of Pocock vs. Blount, 6 Mo. R., 345; 4 Peters, 366; 3 A. K. Marshall, 59, as explained by this court in the case of Ricketson & Holt vs. J. & T. Wood & Co.


McBRIDE, J., *delivered the opinion of the Court.*

This was an action of assumpsit brought in the Circuit Court of St. Louis county, by Collins against Clemens, as assignor of a non-negotiable note, made by the mercantile firm of J. & A. Kerr to James Clemens, for the sum of $3,230 56, bearing 10 per cent. interest, dated the 4th November, 1843, and payable in six months thereafter, and assigned by Clemens, for value received, to Collins.

The declaration contained three counts on the note. The *first* count averred that at maturity of the note, John Kerr, one of the obligors, was dead, and that his estate was, and continued to be, insolvent, so that a suit would be unavailing; and as to Augustus Kerr, the other obligor, that suit was brought to the first term of the court after the falling due of the note, and prosecuted to judgment, upon which execution was issued, and returned *nulla bona*.

The *second* count, in addition, averred that the note, at maturity, was presented for payment to Augustus Kerr, the surviving obligor, and to John Kerr's executor.

The *third* count avers the insolvency, at, and ever since the falling due of the note, of both Augustus Kerr and John Kerr's estate.

Plea, non assumpsit—verdict and judgment for plaintiff. Motion for new trial made and overruled, exceptions duly saved, and appeal by defendant.

The following is a summary of the evidence, as preserved in the bill of exceptions:

A copy of the record from the Probate Court, containing a list of claims allowed against the estate of John Kerr, deceased, amounting in the aggregate to $97,069 09. Also a copy from the same court, showing the settlement of the administrator of said estate, by which it appears that there is a balance of money on hand amounting to $400.

*Richard Peters* states that John Kerr and Augustus Kerr composed the firm of J. & A. Kerr, and dealt formerly as extensive wholesale merchants in St Louis. That the signature of the note sued on is the genuine signature of the firm, and the signature to the assignment on the back is the defendant's hand writing. That he knew of the existence and origin of the note—heard Mr. Clemens say he was on such a note, and that it was a hard case. The note was given to Mrs. Collins for money lent to the Kerr's, for which Clemens was security. Have heard it said the Kerr's were insolvent—it was the common talk, and he has no doubt but that they were so. It is notorious that they are insolvent, and a claim against them is worth nothing of consequence. Augustus Kerr, as surviving partner, made an assignment of the assets of the concern, before the maturity of the note—the assignment is not yet settled up. John Kerr, individually, was largely indebted, and a large amount of his debts were paid under deeds of trust upon his property; but to witnesses knowledge, the estate of John Kerr never paid any but debts that were a specific charge upon his property. Knows nothing of his paying any of the creditors of the firm of J. & A. Kerr. Mr. Allen, the administrator, told witness, there was a mere trifle in the Probate Court; so trifling that it was not worth while to make a dividend. Had nothing to do with the firm of J. & A. Kerr, but was a partner of John Kerr till his death, in the name of Kerr & Peters. Settled most of the debts of Kerr & Peters out of the assets of that firm, and after settlement of that concern there was nothing coming to John Kerr.

*William C. Carr* states that he was well acquainted with the Messrs. Kerrs, John and Augustus. He, with Matthew Kerr, endorsed a note for them for about $5000, and to secure him, John Kerr assigned in trust personal property, which he had sold and paid his part of the debt; the other half remains unpaid, or has been paid by the other endorser. Mr. Allen told him that the estate of John Kerr was insolvent—had several conversations with Mr. Allen on the subject, and learned that the estate was greatly insolvent. He knew a good deal of John Kerr's property, and of the sale of some of it; it was encumbered, and sold under such encumbrances.

*P. D. Tiffany* states, that John Kerr died in Dec'r. 1843. John and Augustus Kerr had been partners in trade, doing a large wholesale business in St. Louis. After John Kerr's death, Augustus assigned the assets of the concern to Mr. Beverly Allen, for the benefit of creditors. Cannot answer whether the estate of John Kerr is or is not insolvent, as the claims allowed in the Probate Court against the estate, are not

only his own debts, and the debts of J. & A. Kerr, but also notes endorsed by J. & A. Kerr, and the debts of Kerr & Peters, many of which debts have been paid since allowance, in various ways; some by sale of lands, which had been conveyed in trust for particular debts; some by Mr. Peters, and some by Matthew Kerr, who was bound as endorser. He is acquainted with Matthew Kerr's transactions, (being his son-in-law;) he paid a large amount of these debts, say about $40,000; upon a considerable amount of which, say 6 or $8000, he is entitled to a dividend out of John Kerr's assets. A large portion of John Kerr's personal property was mortgaged to W. C. Carr. At the time of John Kerr's death, he had a large amount of personal property, chiefly household furniture, and lands at or near Clarksville and Lexington, in Missouri; at Dubuque, in Iowa; and at Galena and Springfield, in Illinois. These lands were not emcumbered, as far as witness knew. All these lands were conveyed in trust to Mr. Allen, as part of the assets of J. & A. Kerr. There was a nominal sale of some of these lands by the trustee, but only one actually sold; the others were bid in to prevent a sacrifice. The property assigned had two liens upon it; a general lien to Mr. Kerr, and specific liens for loans, except the land west of the city, and in Illinois. The trustee has received and paid out a great deal of money—there were valuable lands in St. Louis conveyed to him, which were subject to previous deeds of trust, for debts not due; for these Mr. Allen received the rents, and paid the interest on these debts, and in this way got $2,500. The liens upon the property were greater than the property would bring in cash. The note sued on, and another note on which Matthew Kerr was endorser, were in the hands of Mr. Collier for collection. I took the precaution to have the note on which Mr. Kerr was endorser, allowed both before the Probate Court against the estate of John Kerr, and before the assignee. Suppose the estate of J. & A. Kerr will pay a dividend—how much nobody can *tell*; there is still due to Matthew Kerr from 6 to $10,000, after a sale of the property on which he had a general lien.

*John F. Darby* states, he held for collection some claims against Kerr & Peters, and a small claim against John Kerr, individually, which he had allowed in the Probate Court against John Kerr's estate; the claims of Kerr & Peters were afterwards settled by Peters, by compounding. He understood from Mr. Allen, the executor of John Kerr, that the estate was badly insolvent; talked with the Probate Judge, and examined the records, and judging from the amounts allowed, don't believe that John Kerr's estate will pay five cents in the dollar. This examination

and inquiry was made with reference to settlements of debts against John Kerr.

*John R. Shepley* states, that he is the administrator *de bonis non*, with the will annexed, of John Kerr.  The account of Mr. Allen, the executor, shows an amount of money of over $400, and there is a note of about $400, so that the assets, as far as I know, amount to about $800—the claims allowed against the estate, by the Probate Court, are something over $90,000.  He considers the estate of John Kerr badly insolvent, and thinks there would remain unpaid more than $60,000, after deducting all debts paid by sale of property or otherwise.

*J. B. Crockett* states, in 1844 the claim of T. Rockhill against John Kerr, was sent to him for collection, and about $12,000 was secured by mortgage on property on Main street; besides which, there was an open account; the whole claim was allowed in the Probate Court.  The mortgaged property was sold, and bought in for the creditor, who directed him to buy it in, if it did not bring the amount of the debt; after the sale a balance of the debt remained unpaid; this was the only way to get the debt paid.  The property was worth about the amount of the debt ; he did not think it worth while to inquire for more property.

The note and assignment thereon was then read to the jury.  Also the record of a suit brought by the plaintiff against Augustus Kerr, one of the makers of the note ; and it was agreed by counsel that the suit was brought to the first term of the proper court after the note fell due; that it was prosecuted to judgment in due course of law; that an execution issued on said judgment without delay, and that the same was returned by the sheriff, *nulla bona*.  The defendant then offered and read in evidence, a deed of trust executed on the 11th January, 1844, by Augustus Kerr to Beverly Allen, conveying to him a large quantity of real estate, lying in this State, the State of Illinois and Iowa.  A number of the lots and tracts of land lying in this State, were subject to mortgages and deeds of trust previously given.  Also, a large amount of promissory notes and open accounts, due to Augustus Kerr and to J. & A. Kerr. Then the evidence that B. Allen accepted the trust, and filed in the office of the Clerk of the Circuit Court, an inventory of the assets conveyed to him.

*Henry L. Cobb*, a witness, stated that he assisted Mr. Allen in the business of the assignment; some of the schedules are made out in witnesses hand-writing ; knows that Mr. Allen collected some money on the claims—some few hundred dollars passed through his hands.  At the request of Mr. Clemens, witness called on Mr. Wickliffe, the attorney who

had the note in his hands for collection, to get him to have the note presented for allowance against the estate of J. & A. Kerr. Mr. Wickliffe said he had not determined what he would do with the note, that Mr. Leslie was counsel with him, and he would consult with Mr. Leslie about it. Mr. Clemens seemed very anxious about it, and I called on Mr. Wickliffe again the next day, when he told me he had determined not to present the note. Mr. Allen had given notice in the newspapers of the time for presenting claims against the trust fund in his hands. The note not being presented by Mr. Wickliffe, Mr. Allen said it might be presented on the next day, or in a day or two. Some money is collected now, and not paid over—certainly not enough to pay all the debts of the two firms.

The protest of the note was then read to the jury; also, the notice of Allen, the trustee, fixing the time and place for exhibiting claims against the trust fund in his hands.

The plaintiff again called Richard Peters, who states that John Kerr's real estate in St. Louis was generally encumbered—that many of the accounts assigned are almost worthless—there are some of the large claims in the list for which lands were taken, and are not settled. A considerable part of the accounts of little value—they are old and well kept—don't know that they are barred by any statute of limitation—is familiar with accounts, and had tried to collect many of them, but could not.

Upon this evidence, the defendant moved the following instructions to the jury:

1. If the jury find for the defendant, they should say so in their verdict, and need say no more.

2. If the jury find for the plaintiff, they ought to state in their verdict for which of the three counts of the declaration they so find.

3. There is no testimony before the jury proving, or tending to prove, that the defendant made to the plaintiff, any express promise to pay her the sums of money sued for in this action, or any of them.

4. Upon the case made by the plaintiff, and upon all the testimony before the jury, the *law* does not *imply* or *presume* a promise by the defendant to pay to the plaintiff the amount of the note sued on, and the jury are not warranted in *implying* or *presuming* any such promise, without proof satisfactory to them that such promise was made.

5. If the jury believe from the testimony that the holder of the note now sued on, could have recovered, or could yet recover, the whole amount of said note, or some part thereof, by exhibiting the same against

the estate of John Kerr in the Probate Court, and prosecuting the same there diligently, and that the holder failed so to exhibit and prosecute the same, the plaintiff ought not to recover in this action.

6. If the jury believe from the evidence that the holder of the note sued on, could have recovered, or could yet recover, the whole amount of said note, or some part thereof, by exhibiting the same against the assignee, or the estate and funds in his hands, and prosecuting the same with diligence, and the holder failed so to exhibit and prosecute the same, the plaintiff ought not to recover.

The court gave the first two instructions, but refused to give the others, and the defendant excepted. Thereupon the court gave the following instructions:

1. If the jury believe from the evidence that the note sued on in this action was made by John & Augustus Kerr—that at the time the said note became due, the said John had deceased—that the plaintiff in this action instituted a suit upon said note at the September term of the St. Louis Court of Common Pleas, in the year 1844, against Augustus Kerr, as survivor of the said John—that said suit was prosecuted in due course of law to final judgment, then execution was taken upon the said judgment on the 8th October, 1845, and placed in the hands of the sheriff of St. Louis county—that the said sheriff made his return on said execution, of no goods, chattels, lands or tenements, of the said Augustus Kerr, whereof to levy and satisfy the said execution, or any part thereof— if these facts appear from the evidence, the plaintiff is entitled to recover against the defendant under the first or second counts of the declaration.

2. Under the first or second counts of the declaration, it was not necessary, nor does the law require that the plaintiff, before the institution of this suit, should have presented the said note for allowance, either to the assignee of Augustus Kerr, or to the court of Probate of St. Louis county, against the estate of John Kerr.

3. If the jury believe from the evidence, that the note sued on in this action was made by John & Augustus Kerr—that at the time the said note became due, the said John Kerr had deceased—that said Augustus Kerr, before the said note had become due, made an assignment, in good faith, of all his property and real estate, and of all the property in his hands as survivor of the said John, and belonging to the said firm of J. & A. Kerr, for the benefit of the creditors of the said firm, and of the said Augustus—that at the time said note became due, and up to the time of the institution of this suit, the said Augustus Kerr was insolvent, so

that a suit against him upon said note would have been unavailing, that is, that the sum of money mentioned in said note, or any part thereof, could not have been collected under a judgment and execution on said note, against said Augustus Kerr; if these facts appear from the evidence, the plaintiff is entitled to recover against the defendant, under the third count in the declaration.

4. Under the third count of the declaration, it was not necessary, nor does the law require, that before the institution of this suit, the plaintiff should have presented the said note for allowance, either to the Probate Court of St. Louis county, against the estate of John Kerr, or to the assignee of Augustus Kerr.

5. Whether the estate of John Kerr was solvent or insolvent, is wholly immaterial to the plaintiff's right of recovery under the third count of the declaration. If the jury believe from the evidence, he deceased before the note become due, the solvency or insolvency of his estate can not and does not change or lessen the liability of the defendant.

The defendant excepted to the instructions given by the court.

This proceeding was instituted under an act of the General Assembly of this State, entitled "An act concerning bonds and notes," R. C. 1835, p. 105, sec. 9, which enacts that "the assignee of a bond or note (other than a negotiable note, as defined by the sixth section of this act,) may maintain an action against the assignor, upon failure to obtain payment from the obligor or maker, only in one of the following cases: *First,* If he use due diligence in the institution and prosecution of a suit at law, against the obligor or maker, for the recovery of the money or property due, or damages in lieu thereof; *Second,* If the obligor or maker is insolvent, or is not a resident of, or residing within this State, so that a suit would be unavailing, or could not be instituted."

The only difficulty in the practical application of this statute, is, to determine when the assignee has used due diligence, in the institution and prosecution of a suit against the obligor, to entitle him to recover against the assignor. As from the diversified circumstances attending those transactions, no inflexible rule can be laid down, each case must therefore depend upon its own peculiar facts, or be decided from analogy to adjudged cases.

If in the case under consideration, the right to recover was founded upon the total insolvency of the makers of the note, then the question would be one of fact for the decision of the jury; but it is contended, that if insolvency is not fully established, the plaintiff is still entitled to recover, because one of the obligors died before the maturity of the note,

and the other made an assignment for the benefit of creditors. We have not been able to find any adjudged cases directly in point.

In Pirtle's Digest, p. 44, sec. 53, it is said, "where the maker of the note is dead, when the note becomes due, and there is no administration on his estate, and no heirs, the assignee may proceed against the assignor, and prove insolvency by parol." 2 Marsh. 255. And in sec. 56, it is said, "the assignee must diligently pursue all legal means to obtain payment of the instrument assigned; and where the debtor has rendered a schedule of his property, under the law concerning insolvent debtors, he must show that he has taken such steps as he may, to avail himself of the articles contained in the schedule." 3 Marsh. 60.

From the whole tenor of judicial decisions on the subject, it may be asserted, that the assignee must prosecute the claim, with that diligence which a prudent man would, if he were an original party to the contract. And there is no hardship in requiring this strictness at the hands of the assignee, for the law substitutes him for the obligee in the bond, placing the control of the case in his own hands, and holding him responsible for any loss which may arise from his neglect. If this be so, then we think the assignee is bound to prosecute his claim against the estate of a deceased obligor, or against the funds of the obligor, if they be in the hands of a trustee, unless he is enabled to show that the estate is insolvent.

Another question here arises, where the estate is not wholly insolvent, and the assignee might be enabled to obtain a part satisfaction of his debt—what part of the debt, if part only could be made, would impose upon him this obligation? This would depend upon the amount of his claim, and the dividend which could be obtained. Suppose the amount sued for was $10,000, and that ten per cent. could be obtained by presenting the demand, either to the county court, or against funds in the hands of a trustee, this would be $1000, which would compensate for the costs and trouble of collecting; but if the amount claimed was only $100, and but ten per cent. could be obtained by the above proceeding, then the law would not impose so useless an act upon the assignee, as the conducting a proceeding where the amount obtained would not pay the costs. Whether, therefore, the amount which could probably be obtained by such a proceeding, should make it the duty of the assignee to prosecute the same, must from necessity, it appears to me, be referred to the jury under the direction of the court. See the case of Ricketson & Holt v. J. & T. Wood, 10 Mo. R. 547.

From the evidence in the case, it is very questionable whether the

prospect of getting an amount sufficient to authorize the assignee in presenting her claim to the county court or to the trustee, imposed upon her the duty of doing so. Some individuals, having claims against the obligors, were of opinion that nothing could be made by such a course, whilst others, through abundant caution, presented their claims for allowance. The court should have referred the question to the jury. Whether there was an express promise by the assignor to pay the assignee the amount of the note sued on, or an implied promise, or neither, is unimportant, as the law gives the plaintiff the right to recover when she shall make out her case according to its provisions.

For the giving of the fifth instruction the judgment will be reversed and the cause remanded.